THOMPSON, Adm'r, etc., *v.* CHICAGO, M. & ST. P. RY. CO.

*(Circuit Court, D. Minnesota.  October 6, 1883.)*

1. NEGLIGENCE OF CO-EMPLOYES.
    The engineer in charge of a steam-shovel and a workman engaged with the said machine are co-employes, and if the latter is injured by reason of negligence or want of prudence on the part of the former, there can be no recovery.
2. SAME—KNOWLEDGE OF SUPERIOR OFFICER.
    Where it is claimed that an employe is injured by negligence or carelessness on the part of his superior officer, it must be shown affirmatively that the superior was in possession, or might by the exercise of ordinary care, prudence, or intelligence have been in possession, of knowledge as to the dangerous character of the work, which knowledge was unknown, and by the exercise of ordinary care, prudence, and intelligence on the part of the employe could not not have been known, to said employe.

At Law.

*C. K. Davis* and *Colburn & Bassett,* for plaintiff.

*Bigelow, Flandrau & Squires,* for defendant.

SHIRAS, J., *(charging jury.)*  In this cause the plaintiff, as administrator of the estate of Christel Olsen, seeks to recover damages in the sum of $4,995 against the defendant, the Chicago, Milwaukee & St. Paul Railway Company, on the ground that said Olsen, while in the employ of the company, was killed by the falling of a bank of earth upon him, on or about the twenty-fourth day of July, 1881.

It appears from the admission in the pleadings, and from the undisputed evidence in the case, that Christel Olsen had been, for some time prior to his death, in the employ of this railroad company as a section hand upon that part of its road running through Fillmore county, in this state; that in July, 1881, he, with others, was taken from the ordinary section work, and formed into a gang and put to work at a point upon the road known as Ryan's cut; that their work consisted in cutting out and loading upon cars earth and materials used in filling up other portions of the defendant's track, the same being dug out by means of a steam-shovel, which was operated both day and night,—the said Olsen forming part of the force that operated the shovel during the night-time; that Olsen, with an assistant, was placed between the steam-shovel and the bank of earth, by the side of the shovel machine, which was placed about eight feet from the bank; that the work of excavating the bank for filling purposes was under the general supervision of one Thomas Kavanaugh, who

was a road-master in charge of some 50 miles of defendant's road, including the point known as Ryan's cut; that the work of excavating this bank or cut had been in progress for some time, and the cut had been carried a distance of some 500 or 600 feet, its height varying from 6 to 18 or 20 feet; that early in the morning of July 24, 1881, while the said Olsen was in his proper position by the side of the steam-shovel, the bank fell upon him, causing his immediate death; that Thomas Thompson, the plaintiff herein, has been duly appointed administrator of the estate of the deceased, and in that capacity is entitled, under the laws of the state of Minnesota, to maintain an action for the damages caused by the death of said Olsen, against any party legally responsible for the death of said Olsen, if any such there be.

The plaintiff in this action claims that defendant is legally responsible for the damages caused by the death of said Olsen, and as grounds for such claim avers, in substance, that the bank at the place where the steam-shovel was being operated on the night of the twenty-third and morning of the twenty-fourth day of July, 1881, was composed of earth, clay, sand, or gravel, and was, from its composition, liable to cave in and fall down; that Kavanaugh, the road-master of defendant, knew by personal inspection the unsafe and dangerous character of the bank, and its liability to cave in or fall down, unless it was sloped or otherwise protected; that, without taking proper precaution for the safety of the men under him, he required them to carry on this work; that he placed Olsen between the bank and the steam-shovel, and did not warn him of the danger to which he was exposed; that Olsen was ignorant of the danger, not being acquainted with the character of the bank; that by the mode in which the work was carried on under the direction of Kavanaugh the bank was caused to fall, thereby causing the death of said Olsen. These allegations are denied by the defendant, who claims that the falling of the earth was an unforeseen accident, and was not caused by any negligence on the part of said Kavanaugh, and that Kavanaugh did not know, or have reason to suspect, that there was any special risk or danger of the bank caving in, and that he had no more knowledge in regard to the bank, its composition, and liability to cave in and fall down, than had Olsen himself.

In cases of this character it is not sufficient, to enable the plaintiff to recover, for him simply to show that his intestate, while in the employ of the company, was killed by some accident happening in connection with the business of the company. Plaintiff, upon whom the burden of proof rests, must show further that the accident causing the death of his intestate was itself caused by, or resulted from, some negligence on the part of the railroad company, or on the part of some of its employes acting for the company; and that, while so acting, they do not occupy the position of co-employes engaged in the same common enterprise with the intestate. The business of

railroading, in all its branches, is a more or less hazardous vocation, and those who engage in the same are held to have assumed the peril and hazards which ordinarily pertain to the business when properly carried on by the company. In this case, therefore, it is not sufficient, to enable plaintiff to recover in this action, for him to simply show that his intestate, Olsen, was killed by the caving in or falling down of a bank of earth upon him while he was engaged in excavating the same for the benefit and under the direction of the defendant.

The plaintiff bases his right to recover upon the principle that if there is about the employment a danger or risk which is known to the employer, or in the exercise of ordinary care would be known to him, and is not known to the employe, then it is the duty of the employer to notify the employe of such risk; and if he fails to do so, and the employe is injured, then the latter may recover. To enable the plaintiff to recover he must satisfy you by a fair preponderance of the evidence that previous to the happening of the accident in question the said Thomas Kavanaugh, the road-master of the defendant, knew, or by the exercise of ordinary care might have known, the dangerous character of the bank that was being excavated, and that, if the work of excavating the same was carried on in the manner in which he directed it to be done, there was danger of its falling down; and that, having such knowledge or means of knowledge, he failed to notify Olsen of such danger, and that Olsen, on his part, was ignorant of such danger.

What, then, gentlemen, do you find the fact to be upon this issue? Does or does not the evidence fairly satisfy you that when Kavanaugh was at Ryan's cut, just previous to the accident, he then knew, or in the exercise of ordinary care and prudence should have known, that if the work of excavation was carried on as by him directed it would increase the liability to cave or fall down to a dangerous extent, so that, in the exercise of ordinary care and prudence, he should have notified the workmen of such danger. Did or did not Olsen have the same knowledge or means of knowledge of the condition of the bank and the risk of its falling, as did Kavanaugh?

In determining these questions, gentlemen, you must bear in mind that you are to consider them in the light of the knowledge which the parties had before the accident happened. The true question is, how did the bank and excavation appear, and what evidences of danger were there fairly within the reach of the parties, before the accident happened. If, then, gentlemen, you find, under the evidence, that Kavanaugh, when directing the prosecution of the work, during the night of the accident, knew, or in the exercise of ordinary care and prudence should have known, that the further prosecution thereof, in the manner he directed the same to be done, would subject the workmen to unusual or increased risks, of which they were ignorant,

then it was his duty to have notified the workmen of such increased danger; and if he did not do so, and the workmen, in ignorance of the increased risk, continued the work of excavating the bank, and the same caved or fell down, and injured or killed any of the workmen, the company would be liable for the injury they caused. If, however, the workmen knew the increased risk or danger, or had the same means of knowledge regarding the same that Kavanaugh had, so that by the exercise of ordinary care on their part they would have had equal knowledge with Kavanaugh of the risk and danger, and they chose to continue in the work, then they are deemed to have themselves assumed the risk, in which event the company would not be liable.

Then, restating the proposition more briefly, you are to determine—*First,* whether Kavanaugh, when directing the carrying on of the work at Ryan's cut, just before the accident happened, knew, or in the exercise of ordinary care should have known, that to continue the work of excavating in the manner he directed it to be done would render the position of Olsen hazardous to a degree beyond that which Olsen had a right to expect from its appearance, and from the knowledge he had of its probable character; *second,* whether Olsen knew, or in the exercise of ordinary care on his part should have known, that this increased danger, if any there was, existed. If you find that Kavanaugh did not know, or in the exercise of ordinary care might not have known, the existence of any unusual or increased danger in continuing the work, then the defendant is not liable, and the verdict must be for the defendant. If, however, you find that Kavanaugh knew, or in the exercise of ordinary care should have known, of the increased danger to the workmen, then your verdict should be for the plaintiff, unless you find that Olsen knew, or in the exercise of ordinary care on his part should have known, the existence of this increased danger. If he did know, or in the exercise of ordinary care should have known, the increased risk or danger, and he continued to work in the position he was placed in, then he is held to have assumed the risk himself, and in such case the plaintiff cannot recover, and your verdict must be for the defendant. In determining the questions of the knowledge, or means of knowledge, which Kavanaugh on the one hand, and Olsen on the other hand, had of the bank, its composition and liability to cave or fall down, you are to take into account the knowledge or experience which these parties respectively had of such banks, and of the work of excavating the same, especially with the steam-shovel, as well as what they knew of this special bank.

From the foregoing instructions you will perceive, gentlemen, that to enable plaintiff to recover he must satisfy you, by a fair preponderance of the evidence, that Kavanaugh knew, or in the exercise of ordinary care should have known, that there existed a peculiar or unusual danger in prosecuting the work of excavating, which danger was

not communicated to Olsen, and of which, without fault on his part, he, Olsen, was ignorant. If you find the fact to be that Kavanaugh, without fault on his part, was ignorant of the danger when last at Ryan's cut, and that after he left the place where the work was being done the men in charge of the steam-shovel caused the bank to fall by digging more deeply than was prudent, then this negligence would be the negligence of co-employes, the risk of which was assumed by Olsen, and for which the defendant is not liable. So, also, if it appears that the bank fell down, not by reason of the want of due care on the part of any one connected with the work, but by reason of some unforeseen change in its composition, or other like fact, the defendant could not be held liable for injuries caused thereby. In such case the falling of the bank would be a pure accident, and no one would be responsible therefor.

In other words, to entitle the plaintiff to a verdict, you must be satisfied that Kavanaugh knew, or in the exercise of ordinary care should have known, that Olsen was about to be exposed to an unusual and extraordinary danger, the existence of which was not communicated to him, and that Olsen did not know, and was not in fault in not knowing, of the existence of this extraordinary danger, but in ignorance thereof, and in obedience to the orders of his superior, subjected himself to this increased danger, and in consequence thereof met with the accident which caused his death. If, under the instructions given you, and the evidence submitted to you, you find for the plaintiff, you will then be required to assess the amount of damages to which the plaintiff may be entitled. The general rule by which you are to be governed is the amount of pecuniary loss caused to the estate of Olsen by his death. In determining this amount you will take into account his age at the date of his death, the condition of his health, and his ability to labor; the probable duration of his life; the amount of his probable earnings; and from these *data* you will determine the sum to which plaintiff may be entitled. You will remember that the sum you award is given in a lump, and is, therefore, freed from the uncertainties that pertain to the ordinary affairs of life, and should be such reasonable sum as the evidence justifies you in awarding, uninfluenced by the fact that the defendant is a corporation.